## Case No. 7,574.

### The JULIA.

[1 Gall. 233.] [1]

Circuit Court, D. Massachusetts. Oct. Term, 1812.

SHIPPING—FORFEITURE FOR ILLEGAL TRAFFIC.

If a licensed coaster be engaged in an illegal traffic, she is forfeited under 32d section of the act of 18th February, 1793, c. 8 [1 Stat. 316]. Case of rank presumption of illegal traffic. Condemnation.

[Cited in The Nymph, Case No. 10,389.]

[Appeal from the district court of the United States for the district of Massachusetts.]

This was an information, filed on the 17th June, 1812, and contained three counts, the first of which was founded on the non-importation law; the second, on the coasting

---

[1] [Reported by John Gallison, Esq.]

act; the third, on the act regulating the collection of duties.

G. Blake, for the United States.
A. Ward, for claimant.

STORY, Circuit Justice. This is a very extraordinary case. It appears from the evidence produced by the United States, that the Julia is a vessel duly enrolled and licensed for the coasting trade. That on the 10th day of June, 1812, she was seen lying near Chelsea bridge, in Mystic river, apparently loaded with wood. From what port she came, has not been distinctly proved. At one time the master said from Penobscot, and at another, from Eastport; but he had Halifax newspapers on board. The movements of the vessel during that day attracted the notice of some of the officers of the customs; and she was watched during the ensuing night, when her conduct confirmed the suspicions already entertained. On the following day, an assistant of an officer of the customs went on board; and the vessel proceeded to Medford, and came along side of an old decayed wharf, which had not been apparently used for some time; and was at the distance of a mile and a half from the dwelling house of the claimant, and in a situation unfavorable for unloading. Two assistants were left by the custom-house officers to guard and watch the vessel during the night of the 11th of June. About ten o'clock in the evening, it being then quite dark, seven teams, with horses and a hackney coach, drove down near to the wharf, and immediately two or three platoons of eight men each, dressed in disguise, armed with clubs and other offensive weapons, assailed the assistants; one escaped, the other was taken and carried on board of the sloop, put down into the cabin, and locked up. In this situation he remained during the night, and until relieved by an officer of the customs on the next morning. Soon after being put into the cabin, the assistant discovered two persons lying in their births, one of whom affected some surprise, and asked the reason of the disturbance; but upon some remarks being made by the assistant, without further inquiry, desisted and affected to go to sleep. Immediately after this the deck-load of wood was removed with great noise and confusion. The hatches were opened; and the assistant distinctly heard goods removed in the hold and hoisted up, axes and hammers driving, and heavy articles, apparently boxes, &c. striking, as they were hoisting, against the combings of the hatches. The assistant expressly states, that the noise of removing, &c. was that of boxes, &c. and not merely of solid wood. After a few hours, the whole noise ceased.

In the morning, the deck-load was found in great confusion; and two tiers of wood were in the hold, one before and another abaft the hatches, and a number of logs ly-

ing confusedly in the hatchway. Neither captain nor mate were then on board; but soon afterwards the captain came on board, said "he had lodged at a tavern; that it was damned strange that he was obliged to be robbed so." He was immediately told, that he was thought to be one of the robbers; and if he was not, he could immediately advertise. He replied, "it was judging hard, and he should not trouble himself about advertising." The vessel was therefore seized, and three or four days afterwards the captain came for his clothes, and has never been since seen by the government's witnesses. There are many other circumstances in the case, which I forbear to detail: Not a single witness has been produced by the claimant; not a single alleviating circumstance has been offered to rebut a case so pregnant with suspicion and unfavorable presumption.

The information contains various counts: 1. For taking on board, with the knowledge of the owner and master, certain prohibited goods, in a foreign port, with intention to import them into the United States; and actually importing them into the United States, contrary to tne act 1st March, 1809, c. 91 [2 Story's Laws, 1114; 2 Stat. 528]. 2d. For being engaged in a trade other than that for which said sloop was licensed, contrary to the coasting act of 18th Feb. 1793, c. 8. And 3d. for receiving from some unknown vessel, within four leagues of the coast of the United States, foreign goods liable to the payment of duties, &c. without any accident, necessity or distress requiring the same, contrary to the collection act, 2d March, 1799, c. 128, §§ 27, 28 [1 Story's Laws, 597; 1 Stat. 648, c. 22].

It will be recollected, that no explanation of the case is given by the claimant. Neither the master, nor the mate, nor the seamen of the sloop, are produced. No apology for this extraordinary transaction is attempted. It began and ended in darkness; and the light has not yet been permitted to dawn upon it. Now I must say, that the evidence affords an almost irresistible presumption of illegal importation of foreign prohibited goods, and of deliberate enterprise in an unlicensed trade. I do not perceive but that every presumption equally tends to prove the case, as laid in every count in the information. The facts call so loudly upon the claimant for some reasonable explanation, and so malignantly taint the transaction with fraud, that I feel myself bound to declare. that the silence and concealment with which the claimant wraps himself affords no hope, that a single doubt in favor of innocence ought to be cherished.

I shall therefore reverse the decree of the district court; and decree the sloop and appurtenances to remain forfeited, with costs, to the United States. Condemned.

This was affirmed on appeal. See 8 Cranch [12 U. S.] 181. See, also, The Aurora, Id. 203.